and I guess we'll hear from Mr. Jones first. Good morning, Your Honors, and may it please the Court, Robert Jones, along with my colleagues Dan Sweeney and Jason Winston from Sullivan and Cromwell, on behalf of the Plaintiff Appellant Jason Wayne Gowen. Your Honors, much in this case is in dispute, but what we know for certain is that in the fall of 2018, while a pretrial detainee at the Lynchburg Adult Detention Center, Mr. Gowen was charged with what defendants call a management problem. But the record evidence, when construed in Mr. Gowen's favor, reveals that defendants actually placed him in solitary confinement to punish him for his use of the prison's grievance process and that they used a procedurally flawed process to do so, all in violation of his 14th Amendment due process and First Amendment rights. Your Honors, in considering these claims, the District Court committed two errors, one at the summary judgment stage and one at the motion to dismiss stage. At summary judgment, in considering Mr. Gowen's due process claims, the District Court ruled that Mr. Gowen failed to exhaust available administrative remedies. But in so doing, the District Court did not consider the assertions in Mr. Gowen's verified complaint showing that he did exhaust available administrative remedies before bringing these claims and at the motion to dismiss stage. Let me get a little bit of background that I'm confused about. He was purportedly, under the prison view of the case, he was just being, his institutional classification, he was being reassigned, right, administratively, according to them. Yes, sir. And to be reassigned, you don't have to have a violation. You could be reassigned, you want to put people with the same diet together or maybe you put people with some other interest together and for prison administration. And under the rules, I didn't see the rules in the record about institutional classification committee hearings. It's a three-person hearing board, right? That's correct, Your Honor. And according to your client, he was told there's no appeal from that. That's correct. And I believe that's probably correct. There's probably no appeal from that because it's an administrative thing, whereas if he was being punished with a grievance, there would be a hearing, he'd have a right to appeal and exhaust. So if there's no appeal from it, then there's no exhaustion requirement. Well, Your Honor. Would that be the case? Not necessarily, Your Honor. That's not our view of the facts of this case. Just to clarify, Mr. Gowen did say that right after the ICC hearing that he objected verbally to what had taken place at the hearing. No, I'm not. You're probably missing my whole point. Apology, Your Honor. I'm suggesting this is not even an exhaustion case because there was nothing further to exhaust, but I didn't see the rules on that in the record. Understood, Your Honor. The grievance process has a hierarchy of appeals that have to be exhausted. But basically, he was put in solitary confinement under an administrative assignment. And at that point, it seems to me if there's no appeal, he could file his suit right away. I would completely agree with that, Your Honor. If you agree with that, then let's go back to my question, which was where are the rules governing this institutional ICC, whatever, institutional classification? That's correct, Your Honor. I'm not aware in this record of any rules about the ICC's appellate procedures and policies. I know that the jail policy... Are there rules that lay out what it does and what its jurisdiction is and this type of thing? There's some sworn testimony from, in the form of declarations and affidavits, that it's typically used for administrative purposes and to classify inmates. But those are defendants' contentions, of course, Your Honor. And when we're looking at... No, but I'm just taking it from there. It seems to me this is ultimately favorable to you, so I would... No, I'm not trying to fight you, Your Honor. I'm not... I'm absolutely not... The theory is that you failed to exhaust and then threw it out on that basis. And I'm suggesting to you that there was nothing to exhaust based on what I was able to look at. This is not an appeal from a grievance procedure. This is an appeal from an assignment to solitary confinement. And the district court said he didn't exhaust, and I'm suggesting what rule or what process is there to review an ICC determination? My response is I'm not aware on this record of any policies laid out on how to appeal an ICC decision. One prison official said she didn't provide any notion of appeal, but she said you could file a grievance. But that doesn't quite make sense because the grievance procedure starts with working it out with the local prison guard or whatever, and you can't perceive a local prison guard overruling a three-judge committee on the assignment of prison assignments. I mean, it just doesn't fit. I agree with that, Your Honor. So I think how I would characterize this is Mr. Gowen was trying to fit a square peg into a round hole. He still tried to use the grievance process to make sure that he exhausted in case, just in case. But I take Your Honor's point that there's no appellate right for the ICC procedure. Would that end this case? Yes, Your Honor. We would prevail and the district court's decision should be reversed. My only point is that Mr. Gowen went above and beyond that to try to exhaust. And as we know from the record, he did the first three steps of the four-step prison grievance process to complain about the ICC's hearing decision, taking Your Honor's point that it doesn't really make sense that you would file grievances about it. Why would he have to do that? In other words, if he can't appeal the committee's decision, he can grieve it and complain about it. But it seems to me when we're talking about exhaustion, it's using available steps provided by the process. And my initial question to you is, what is the process? I haven't run that down and that's why I was asking you, when you have an ICC determination, does the prisoner have any set forth process to review that? I understood your question, Your Honor. And on this record, I'm not aware that there's any evidence of what the process is. It's a factual question because he said it's a complaint. He was told there was no appeal from it. Completely agree with that, Your Honor. And at the very least, that rendered the fourth step of the four-step process unavailable. But it also is a fair characterization that it rendered the whole process unavailable if he even had to use it. That's just assuming that he had to use the prison's grievance process that's established. But I'm not aware, based on the policy documents in the record, of how a prisoner is to go about or if a prisoner even can appeal the ICC's decision. And I think, Your Honor, to just talk briefly about the district court's error in this regard beyond that, I think it really is dismissing the assertions in the verified complaint as conclusory and unsubstantiated. This court's precedent is very clear that assertions in the... What's that address? What does it go to? I mean... It's about the exhaustion requirement. It's about whether Mr. Gowen exhausted it. Is that Your Honor's question? Why are you going into the court ignored the verified complaint? I mean, the fact is the court assumed he had to exhaust and didn't exhaust it. That's right, Your Honor. I'm just trying to cover all my bases. I completely take Your Honor's point. The point is that if he did have to exhaust, the assertions in his verified complaint show that he did exhaust all available administrative remedies. That's the point that I'm making. I think the other issue I just want to briefly touch on is the district court's remark that Mr. Gowen conceded this issue by not raising it in response to defendant's motion for summary judgment, assuming, again, that he even did have to exhaust. And this court's precedent, Williams v. Griffin, has been clear that when there are assertions in a verified complaint, those are part of the factual record that need not be reasserted in response to a motion for summary judgment, and there are several cases from the court on that. So those are the two district court errors on the exhaustion, and that's sufficient to reverse the summary judgment decision, because the district court's decision was solely based on administrative exhaustion and those two things. The district court tacitly suggested, in fact, that there were many factual disputes about the merits of Mr. Gowen's due process claims, which, of course, the district court should consider in the first instance. The court, of course, could affirm on any basis supported by the record, but I don't encourage the court to dive into that factual morass. The district court should certainly do that in the first instance. Can you talk about the motion to dismiss? Yes, Your Honor. It read my mind. On the motion to dismiss issue, Your Honor, Mr. Gowen asserted a First Amendment retaliation claim. The district court's key error in that regard. Okay. I'm curious. What's the temporal proximity in his complaint? Can you show me where there's this temporal proximity between his being, I guess, in administrative segregation and his complaint? Certainly, Your Honor. In the very start of the complaint, the very beginning, Mr. Gowen lays out in August of 2018 and throughout August how he filed prison grievances, which is the protected First Amendment activity. He was then removed to solitary confinement on September 26, 2018. So in the very month before he was filing these grievances, and this court said in Constantine that a four-month time lapse between protected First Amendment activity and consequences adverse to First Amendment rights is sufficient at the pleading stage to meet the causation element. So here, Mr. Gowen's less than at most a month time lapse between the grievances and the adverse consequences is sufficient to plead the First Amendment causation element. To briefly touch, I think there's no dispute here among the parties and the court's precedent is clear that filing prison grievances is a protected First Amendment activity. The defendants, in their brief before this court, addressed the second element, which is that a plaintiff must— In couple with having the argument on this, as a due process question, Mr. Enich is not before the court. He's not represented here. The appeal was very clear. It was taken from a specific order on a specific issue, and we're hearing that issue. How do we adjudicate the claims or the—Mr. Enich's position, he's out of the case. He was—his name not even mentioned in the notice of appeal. I don't know—if he's not in our court, isn't it a little unfair for us to be arguing a First Amendment issue? He may be able to appeal that again if we were to send it back, because it's still an order in the case, and the case has not ended. He can appeal a final judgment from anything, but in this case, Mr. Enich was dismissed from the case. His name was removed from the caption, and the appeal was taken only from—very specifically, he cited the issue on failure to exhaust on his appeal. Don't we have a real problem with that? To your first point, Your Honor, Mr. Gowen's not pursuing an appeal against Defendant Enochs of any claims, and he's not— The appeal was dismissed. That's the First Amendment claim. It was dismissed against all defendants, Your Honor, and Mr. Gowen's only pursuing an appellate challenge against the defendants who are before this court. So if it went back down in this court, reversed, Mr. Enochs would not be before the court again, and defendants here have had ample opportunity, obviously, to brief this First Amendment issue. On Your Honor's second point about—forgive me, Your Honor—the second point you brought up on the First Amendment piece, I think a key thing to mention is the adverse consequences element, which defendants seem to say that because Mr. Gowen was able to file grievances while he was in solitary confinement, that he didn't suffer adverse consequences, adverse to his First Amendment rights by being placed there. Just to be very clear, it's an objective test, and this court has been clear that being placed in solitary confinement adversely affects a prisoner's ability to exercise his or her First Amendment rights as an objective matter. It depends what his First Amendment rights in prison. I think it's a very complex question. I mean, if—outside, we would say organizational rights, associational rights, speech rights are heavily protected, robustly protected. But in prison, all of those rights are probably foregone in terms of prison administration, and the whole analysis of what is protected in prison and what isn't is a complex issue. My only question is—in his appeal, he says, I received memorandum of opinion by Judge Cullen on March 25, granting defendants motion for summary judgment due to the failure to exhaust all administrative remedies. This is my notice of appeal from this decision. And it seems to me it's not ambiguous. We would give the prisoner a lot of latitude, but—and judgments, as you know, include earlier judgments unless you limit it. And I have difficulty with getting over that. The key word there, Your Honor, in the notice of appeal is decision. He appealed the court's summary judgment decision. That's how he described it. He says, granting defendants motion for summary judgment due to—and he explained—to failure to exhaust all administrative remedies. I understand that, Your Honor. The district court here didn't enter a separate final judgment. It entered an order striking the case from the court's active docket. That is what we contend is— He cited the date of the order, too. I'm not quarreling with those facts, Your Honor. It's the 25th of the specific order. So whatever's in that order is what he's appealing. And that's the final decision in this case. That functions as the final decision because it resolves all claims against all parties. And by appealing that, he brings up for review, as Your Honor pointed out, all interlocutory orders rendered before that decision. That would include the motion to dismiss. Only if it's a final judgment, but he's appealing to the specific issue, I think. It's—well, I understand your argument. Thank you, Your Honor. Yes, I disagree with that, Your Honor, as you would expect. I think that he appealed the final decision, which brings up the whole case. But— Didn't our court address this issue in Jenkins? In—I'm sorry, what was the— In Jenkins. I'm sorry, Your Honor, I was— In Jenkins v. Woodward, didn't this court address that issue of appealability? Yes, Your Honor. I think we don't even need to look at case law because the federal rules themselves are clear. The federal rules are clear that—and specifically say that appealing the judgment that resolves all claims against all parties, that an appellant need not specify certain things or certain decisions. And there's even another federal rule that says even— I agree enough that I'm filing a notice of appeal. The other side of this coin is if we were to send it back, wouldn't that still be a viable judgment or a viable order that could be appealed? The motion to dismiss decision, Your Honor? Yes. I mean, in other words, if we vacate and send it back, well, I don't know what the—I don't want to prejudge anything. The final point I would make, Your Honor, is the federal rules are clear that even noting certain things in a notice of appeal, unless you expressly state that you're limiting your notice of appeal, doesn't foreclose your ability to challenge prior interlocutory orders. I see my time has expired. I ask the Court to reverse. You have some rebuttal. Yeah. Thank you, Your Honor. All right. Mr. Goeter. May it please the Court, Chris Dadak on behalf of the appellees. I'll start with Your Honor's proposition about the appellate procedures for ICC hearings. There is a grievance procedure spelled out in JA 185. I've read that. I read all that was in the record on this, and that is all grievance procedures. Incorrect. There was nothing that I saw, and that's why I was asking about—I didn't do an independent search of what is the process in connection with institutional classification committee determinations. And of course, those are thought to be by your client to be administrative decisions of assigning inmates. And so my question is, is there a rule, number one, that addresses the procedures before the ICC board? And number two, is there a right to appeal in those procedures further to some other board or some other person? Your Honor, I've not been able to find in the record that specific outline, so I apologize if I missed it. The grievance procedures lay out what is exempt, which is disciplinary hearings, and disciplinary hearings do have a specific appellate procedure. And because it's exempt— We've seen that again and again in cases. I understand all that, but I'm worried about the confusion between a grievance and a determination of an administrative termination of the ICC. They did not consider that to be a grievance. And he was told, he said, that there's no appeal from that, and that makes a lot of sense to me, that there's no appeal from an administrative decision under the CCs. But I could not confirm that because nobody put those rules. You put in the grievance rules, but that's a different issue. Understood, Your Honor. I mean, the decision of the ICC is what put him in isolation. Correct, Your Honor. But keep in mind, his issue is not the decision. He's not saying, you looked at it, you made the wrong decision, I'd like to appeal your decision. He's saying, my rights were violated. I did nothing wrong, and I was sent to isolation, and the operative order that sent him to isolation was the decision of the ICC. But what he was trying to grieve was his due process violation, saying, you did it wrong. The hearing was constitutionally deficient. The question is, the district court said he didn't exhaust and threw him out of court without going any further. And my question is, what further process should he have exhausted pursuant to the rules of the institution? Well, pursuant to the rules, it'd be grievable. That's not a grievance. The ICC was the determination, an administrative determination, put him in isolation. They didn't say he did anything wrong. They said he was a troublemaker. That was their reason for hearing it. But even that sounds pretty strange. But if it's an assignment, they assigned him, why'd they assign him to, he didn't do anything wrong, did he? They didn't accuse him of violating a rule of the prison? You're correct, Your Honor. They said they were not penalizing him, right? That's correct, Your Honor. Okay, so there's a whole process when you impose a penalty. That process is not relevant to his determination to send him to isolation. What was relevant is the ICC determination. And my question is to you, and I still haven't, don't know what the answer is, where does he go to review that within the prison system under the rules that are established? Apologies, Your Honor, to not interrupt. Because there is no appeal procedure, he'd be filing a grievance, Your Honor. Why would he file a grievance? Because he is claiming that... That's what one of your persons said in a declaration, but the grievance has a whole procedure which all of a sudden puts little local guards in charge of the administrative decision decided by three members. And that doesn't make sense. Then you have to go and appeal that up to the next level, and they're reviewing an administrative decision? It doesn't make sense. But I want to see it in a rule. In other words, if somebody says you should grieve it just like you're saying, it doesn't make sense. But that doesn't answer my question. My question is, what further procedure is provided by rules to review the decision of an ICC? Based on the record in front of me, Your Honor, and I apologize if I missed anything, my argument would be, Your Honor, because there's a specific appellate procedure for disciplinary hearings, which are exempt from the grievance, and so the rule tells the inmate, because this is a disciplinary hearing, he can file a grievance, enlist the exemptions from grievances, and ICC... He appealed the grievance, but what if he wanted to appeal the decision that sent him to isolation? That was the ICC sent him there. And they sent him there pursuant to their process, and they made a decision, and he was then went. Now, sure, he can file a grievance to object to that, but that's not a mandatory thing. What's mandatory is if there was a procedure to appeal that, and you provided the procedure. There's no exhaustion requirement of telling him he had to file a grievance, is there? Well, for all issues outside of ones exempt from the grievance procedure, yes, Your Honor, he's required to file a grievance. That would be our... How does he review the ICC decision? Well, at minimum, he could file a grievance, Your Honor, and tell the site administrator... Tell what you can do. What does the rule require? I would say the rule does require a grievance, since it's not exempt from the grievance procedure. Well, the best I can do, Your Honor, apologies if I'm missing anything in the record, JA 185, which says because it's not exempt from the grievance procedure, you would file a grievance. You have a grievance right to everything but what's exempt. My question is, there is a decision made by a board, a panel of three persons. I want to appeal that decision. Is there a procedure for appealing that decision? I believe... First, let me ask you, are there any rules for the ICC? I don't know off the record in front of me, Your Honor, and I apologize if I missed it, Your Honor. Is that what we have before us, the decision of the ICC? What we have are his complaints about the procedure deal. We have his complaint that he was sent to solitary confinement by the ICC, and he said that was unjustified. And he said in his complaint that he was told that you cannot appeal the ICC decision. Correct. He doesn't make that allegation. I understand. That sounds like it's true. In a declaration, I believe- I saw that declaration, and that's the one I told you I didn't think. I think that's the one that made the declaration, said she could, if he wanted to appeal it, he had to file a grievance. And so, Your Honor- That's her position. And I'm saying that sort of begs the question, because he's not grieving filing a grievance. He is trying to appeal, exhaust. The whole proposition is the district court said he didn't exhaust available remedies, and the question is, do you have to file a grievance and go through this process of consulting with the local guard there and trying to work it out and going through this thing? When there's a three-member board appointed by the prison to review this assignment, do you say that local guy could overrule the three-person decision? You know, the grievance procedure has that first step, right? Yes, Your Honor. And could the guard, the official, overrule the ICC? I don't know that I could speak on the record, but he could not, Your Honor, based on the  I don't think he could. I don't think anybody could. Well, there are procedures, and he could keep appealing it to someone who then could overturn that, Your Honor. I do believe this Administrator could overturn that decision, which is the whole point of  Just a simpler question, then. Do you have a rule, a written rule, that says the way to appeal an ICC decision is to file a grievance? I don't believe that is explicitly written in the handbook, Your Honor. Apologies if I missed it in the record, but I believe, given from the fact, I'll be repeating  Then let me ask a more general question. Do you have any rules relating to the ICC? Not on the record that I'm aware of, Your Honor. Are you aware of some that exist? I don't know, Your Honor. I apologize. I was not counted at the district court level, so I'm looking at the appellate. That's what we have before us, isn't it? Right. We just have the record in the district court level, Your Honor, so I don't think I could proffer what the rules would be anyway, Your Honor. I didn't mean to put you on, but that is the issue, and I got stuck on that. I mean, if he had a grievance and that was the whole thing, he reduced these things to  He didn't know how else to talk to the administrative officials, but his objection at bottom was being, at least in the case now before us, is being sent to solitary confinement. I understand, Your Honor. Obviously, the court concludes he has an available measure of remedies. That is dispositive. I don't argue that, Your Honor. Our position is that he did have available administrative remedies and failed to exhaust them, as the district court correctly found. If I may briefly address the First Amendment issue, barring the procedural issues that Your Honor has brought up, the temporal proximity is not there. Under their argument, there would be no limit to First Amendment retaliation cases an inmate could bring. As long as he ever brought a grievance, he could always say, well, this administrative proceeding is in relation to my grievance. But for purposes of a motion to dismiss, I think it's their position that he stated a temporal proximity. And my response to that would be, that would be true for every inmate who ever files a grievance. There is nothing in the record that ties any causal relation between this administrative proceeding and him filing grievances. He didn't file a grievance related to that day, and then someone say, you filed a grievance, and so we're going to put you in SEG. There's no causal relation between this proceeding and him filing grievances. There's nothing in the documents. There's no allegations to statements made by anyone. There's nothing in the record that shows a causal relationship between the administrative proceeding and him filing grievances. They cite to Martin 1, in that case, an inmate filed a grievance against an officer's misconduct. The next day, he's interrogated for hours about that grievance, and then placed in administrative segregation. It wasn't just pure temporal proximity in that case. Not only was it much closer in time, but there was a specific act that showed up. What about the ringleader comment? So you want to be a ringleader, huh? We've got a place for ringleaders. And nothing about that statement relates to him filing grievances. I think the district court correctly looked at that statement and said, that is not causally tied to you filing a grievance. Well, I think it's causally tied to him filing a grievance and encouraging his others to file grievances. Is that right? He argued that it was tied to him telling others to file grievances, which is not protected First Amendment activity. Encouraging others to file grievances. So there's nothing in that statement alone. Which, by the way, is also only made by one individual. I think the Eighth Circuit found that it is protected First Amendment activity in Lamar. I am not familiar with that case, Your Honor. Any that did would be entitled to qualified immunity, since no Fourth Circuit case has made that finding, Your Honor. But separate and apart from the qualified immunity issue, isn't it, well, you can look at the case, but in Lamar and the Eighth Circuit, the court did find that an inmate encouraging other inmates to file grievances was First Amendment protected activity. And I see no circuit precedent in our circuit finding otherwise. Unless you can point to one. Not off the top of my head, Your Honor, no. But again, the ringleader comment, it's pretty undisputed from the facts. What about his complaint of the heat in his cell? I think he alleges that also, for temporal proximity. But there's no, that's not tied to a grievance. There's nothing in the record that says he was initiating a grievance procedure in that complaint. There's no, nothing in the record indicates any defendant interpreted that to be starting a grievance procedure. And again, I want to emphasize, to the point, that statement could be retaliatory. Only one individual supposedly made that statement. There's no allegation as to any of the actual ICC officers making that statement, being aware of that statement, being aware of any other grievances he filed. And that here incurs a month after this alleged statement by Lt. Winfield. So this temporal proximity, it's purely based on, oh, I filed grievances in the past. He didn't complain about the heat, file a grievance, and then someone, and then we, after that, said, oh, we've let you go back to the general population, despite, you know, you being a ringleader and causing these issues about the air conditioning, but you filed a grievance, and therefore, we're going to put you out of it instead. That's not what happened. There's no causal relationship between this proceeding, putting him in admin segregation, and him filing any actual grievances. But does the grievance procedure start with him filing, or does it start with his verbal- It starts- I'm sorry. Verbally, I thought the process was to try to verbally resolve the issue. Wouldn't that be the beginning of the grievance? That would be. Yes, Your Honor. And that's what he, according to his allegations, that's what he said, is that he was complaining to the officers about the heat. And could he keep his mail slot open? Well, again, Your Honor, the case law says you should be skeptical of inmate retaliation cases, because they can always be tied to something, right? They can always say, well, I filed a grievance, I made a complaint. Without an actual causal relationship, besides the fact that I've made complaints in the past, there would be no way to limit these type of cases pre-trial. Because every complaint technically starts in formal resolution, correct? No matter, even if it led to force being used by the inmate, he could always say, well, before I beat you up, I complained about something. And that's the true reason you put me in seg. It's not that I acted violent, it's because I complained. If all it took was any temporal proximity, no matter whether it's months, days, any temporal, because there will always be temporal, they argue four months is sufficient. Well, you're saying there would be no way to resolve it pre-trial, but this is a motion to dismiss. It could be resolved pre-trial in a motion for summary judgment, and that would be the time to argue all these facts, right? But it seems that right now it's a motion to dismiss. Correct, Your Honor, but I don't see how the analysis of his allegations would be any different, Your Honor. He hasn't alleged, the issue isn't, well, he alleged X, Y, Z, that's not true. The issue is, all he's alleged is that I've filed grievances in the past. There's no allegation that the ICC here- Well, he allegedly filed a grievance about the heat, and that he began that grievance with a statement, because that's the first step, and that seems like speech. I'm not aware of allegations that he filed a grievance about the heat. I'm not aware of that allegation. Well, but then, I guess, back to my question, though, according to your policy, the grievance, this whole verbal resolution is your policy. And so he's saying, I've initiated this grievance complaint regarding the heat in my cell, and I assume there was some verbal resolution, and you've already said there was some attempt to verbally resolve it. And you've already said that the grievance doesn't, he doesn't actually have to file something for it to be a grievance, according to the policy. So, I'm not sure how, I mean, you're almost arguing against your own policy. Well, my point, I'll tell you, Your Honor, informal resolution is the first step of that procedure. However, if every verbal complaint is considered a grievance, and any response months in time to that statement is sufficient, there is no way to limit these type of claims. And that's our argument, Your Honor, is that, true, a verbal statement is the first step to the process, but that's not a limiting factor. There's nothing causally tied here between him availing himself of a grievance procedure to the administrative segregation proceeding. The ringleader comment is related to him telling a- Actually, a pretty conclusory allegation. He just said, they retaliated against me for filing grievance, or making requests and filing grievances. Correct, Your Honor. And so, the ringleader comment is not causally tied. There's no allegation that the hearing officers had any knowledge of any of these grievances, informed proceedings. There's no evidence that they referred to it, relied on it. And so, to the extent the court wishes to reverse that, we would strongly urge the court to still look at, it has to be each individual action. And there is no allegation at all related to three of those individuals. My time is just about up. And so, unless there are other questions, I give my time. Thank you. We'll hear from Mr. Jones. Thank you, Your Honors. Just a few quick points on rebuttal. First, to Judge Berner's question about Jenkins. It is absolutely correct that Jenkins resolved the notice of appeal issue. In fact, I'll read, Jenkins explicitly challenged the district court's order granting summary judgment. The summary judgment motion in resolving his case, that order encompassed all prior district court orders. So, on top of the plain language of the federal rules with regards to the scope of the notice of appeal, Jenkins, from this court, a 2024 case, interpreted the plain language of those rules in accordance with the language. Second, to Judge Benjamin's question regarding the protected First Amendment activity and when it would occur. Going back to there, I think there's a fair distinction to be made because a judgment or a summary judgment ends the case and when you appeal that, as a matter of rule, it encompasses all preliminary appeals. The only question I had raised is that he specifically described the issue that he was appealing as contained in a specific order dated on a specific date, which only addressed that. And that seems to me would limit his appeal, but that was my only point. Two points, Your Honor. The summary judgment decision resolved all claims against all parties, so it functioned as the final judgment. I understand, but the final judgment, even a general final judgment in a case, you can specify the appeal you're taking. That's correct, Your Honor. He said he was appealing the issue on the exhaustion. The rules and Jenkins both make clear that listing specific things in a notice of appeal does not preclude you from raising prior interlocutory orders that merge into that final decision. On Judge Benjamin's point about the protected activity, just to be clear, we agree with Your Honor's position that verbally complaining about the air-conditioning situation the morning he was placed in solitary confinement, that is the first step of defendants' own grievance process. So if they retaliated against Mr. Gowen, which his allegations say they did, for participating in that grievance process, that's enough to state a First Amendment retaliation claim. And the defendants are concerned about limits and that this might lead to a flood of litigation. The answer to that is defendants should not retaliate against prisoners for engaging in protected First Amendment activity. And if they do so in close temporal proximity to the protected activity, then a plaintiff can state a First Amendment claim. And the final point I would make, Your Honor brought up Lamar from the Eighth Circuit, Judge Berner. Lamar, I think, is very important to this case because the assertions and allegations in this case, when boiled down, even looking at defendants' assertions, are that somehow Mr. Gowen created unrest by suggesting that other prisoners should use the prison's established grievance process. Lamar said, you cannot retaliate against someone for doing that, for that protected speech. That is exactly what happened here, and it's why this Court should look to Lamar and establish in this circuit that there is a protected First Amendment right to just encourage your other inmates to use the already established grievance process. Thank the Court for its time, and we ask that you reverse and remand both the summary judgment and the motion to dismiss decisions. Thank you. Mr. Jones, I understand you're court-appointed, is that right? Yes, Your Honor, that's correct. I want to recognize that service. As you know, that's very important. We take it very gratefully to have your service. Thank you, Your Honor. We'll come down and greet counsel and adjourn for the day.
judges: Paul V. Niemeyer, DeAndrea Gist Benjamin, Nicole G. Berner